NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ERIC CASTORENA ZAMORA, *Appellant.*

No. 1 CA-CR 18-0085
FILED 11-15-2018

Appeal from the Superior Court in Maricopa County
No. CR 2016-114612-001
The Honorable Michael J. Herrod, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph Maziarz, Chief Counsel of Criminal Appeals Section
*Counsel for Appellee*

Law Offices of Michael J. Dew, Phoenix
By Michael J. Dew
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Jon W. Thompson delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Lawrence F. Winthrop joined.

---

**T H O M P S O N**, Judge:

**¶1**        This case comes to us as an appeal under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for Eric Castorena Zamora ("defendant") has advised that, after searching the entire record, he has been unable to discover any arguable questions of law and has filed a brief requesting this court conduct an *Anders* review of the records. Defendant filed a supplemental brief *in propria persona*.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        This case involved an aggravated assault that took place in a small residential park (the "park") in South Phoenix. Thirty-nine-year-old defendant was dating D.V. at the time. D.V.'s younger sister, J.H., was dating the sixteen-year-old victim. Victim and defendant had briefly met once before the assault.

**¶3**        Prior to the assault, victim accidentally elbowed D.V.'s mouth while they were "play fighting," resulting in a cut lip. Some days later, D.V. and J.H. saw victim in the park as they were walking to their neighborhood market. Shortly after passing victim, D.V. and J.H. approached defendant, who was waiting for them outside the park in his truck. D.V. pointed victim out to defendant as the one who cut her lip. Defendant replied that he would go talk to victim about the incident. D.V. and J.H. left defendant and continued to the market.

**¶4**        Defendant then confronted victim in the park and asked why victim had hit D.V. Although victim denied hitting D.V., defendant proceeded to beat victim with a baseball bat. Defendant hit victim in the head, broke both of his elbows, cracked victim's phone, and continued to beat victim in the back after he fell to the ground. Only when the bat cracked did defendant stop swinging. Defendant then drove off in his truck.

**¶5**        Shortly after, Defendant pulled up to the market where D.V. and J.H were and hurriedly ran inside. According to three separate

eyewitnesses, defendant grabbed D.V. by the arm and made multiple statements to the effect of "I fucked up," "I did what you asked me to do," and "I thought you wanted me to hit him." Defendant and D.V. then ran outside and quickly sped away in his truck. J.H. ran to the park and found victim badly injured. Victim's friend called 911, and victim identified defendant as his assailant.

¶6        Five days after the incident, police officers arrived at a property in Guadalupe, Arizona, that they believed was defendant's residence. A house was located in the front of the property. Behind it, but adjacent to another side street, was a detached garage that had been converted into a residence. Defendant's truck was parked on that side street. The officers were outside the detached garage when defendant's uncle came out of the front house and confirmed that defendant was in the garage. The officers then entered the garage, arrested defendant, and exited while they applied for a search warrant. While executing the search warrant of the detached garage, the officers found a cracked baseball bat.

¶7        The state charged defendant with four counts of aggravated assault. Count 1 was assault with a deadly or dangerous weapon, a class 3 felony. Counts 2 and 3 were assault causing fractures and substantial disfigurement to victim's respective elbows, class 4 felonies. Count 4 was assault while the victim's capacity to resist was substantially impaired, a class 6 felony.

¶8        The case was tried three times. The first trial resulted in a hung jury. The second trial ended in a mistrial when a state's witness referred to a probation officer's presence while executing the search warrant against defendant. At the end of the third trial, the jury found defendant guilty on all four counts. The jury found various aggravating factors, including the fact that defendant committed the assault while on probation and that he was previously convicted of a felony within the ten years preceding the offense.

¶9        Defendant was sentenced to concurrent terms of 20 years for Count 1, 12 years each for Counts 2 and 3, and 3.75 years for Count 4. He received 654 days of presentence incarceration.

## DISCUSSION

¶10        In conducting an *Anders* review, we first examine any issues explicitly raised in the *Anders* brief or the *pro per* supplemental brief. *State v. Thompson*, 229 Ariz. 43, 46, ¶ 5 (2012). If neither defense counsel nor

defendant has raised any non-frivolous issues, we then conduct our own review of the entire record for reversible error. *Id.* at ¶ 6.

¶11            Defendant raises several issues in his *pro per* brief. First, he argues that he was deprived of a fair trial because the detached garage was illegally searched, and therefore the bat was "fruit of the poisonous tree." Specifically, the search warrant listed the address of the front house, 5716 E. Calle Magdalena. The property is on a corner lot. Thus, unbeknownst to the officers, the detached garage technically has an address for the side street adjacent to it, 8421 S. Calle Batoua. Defendant implies that this mistake represents a violation of the Fourth Amendment's particularity requirement for search warrants.

¶12            Our supreme court has held that an erroneous address does not invalidate the search warrant as long as the warrant "enables the officer . . . to identify the place." *State v. Morgan*, 120 Ariz. 2, 3 (1978). This court recently addressed the exact issue defendant raises. In *State v. Lohse*, a warrant to search the defendant's property listed an address of a home on the same block as the defendant's home. *State v. Lohse*, 2 CA-CR 2017-0244, slip op. at *5, ¶ 23 (Ariz. App. Oct. 25, 2018). However, the warrant listed details of the defendant's home and of his truck parked out front. *Id.* "Most notably, [the] Deputies were standing by at the residence, awaiting the completion of a warrant to search the residence/property." *Id.* We held that, notwithstanding the incorrect address, the warrant sufficiently described the defendant's home with "reasonable certainty and particularity." *Id.*

¶13            Although the record below does not contain a copy of the search warrant, we can reasonably infer that the warrant sufficiently identified the place to be searched because the garage was, in fact, the only location that the officers searched. The officers applied for the warrant only after they located defendant in the garage. As in *Lohse*, the officers stood outside the garage awaiting completion and issuance of the search warrant. We therefore find no fundamental error in either the search warrant or the subsequent fruits of the search.

¶14            Second, defendant makes several arguments about his counsel's performance before and during trial. Specifically, defendant argues that his counsel made a statement against his (defendant's) interest at trial, failed to call helpful witnesses, failed to challenge the grand jury proceedings, and failed to verify that the police interview of J.H., a minor, was legal. To the extent that these arguments raise an ineffective assistance of counsel claim, they are improper for an *Anders* review and must be raised in collateral proceedings. *Martinez v. Ryan*, 566 U.S. 1, 4 (2012) ("The State

of Arizona does not permit a convicted person alleging ineffective assistance of trial counsel to raise that claim on direct review. Instead, the prisoner must bring the claim in state collateral proceedings.").

**¶15**        We have read and considered the remaining arguments raised in defendant's *pro per* brief and find that no non-frivolous issues exist.

**¶16**        We have also searched the entire record for reversible error. *See Leon*, 104 Ariz. at 300. We find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, defendant was adequately represented by counsel at all stages of the proceedings, and the sentence imposed was within the statutory limits. Pursuant to *State v. Shattuck*, 140 Ariz. 582, 584-85 (1984), defendant's counsel's obligations in this appeal are at an end. Defendant has thirty days from the date of this decision in which to proceed, if he so desires, with an *in propria persona* motion for reconsideration or petition for review.

**¶8**        We affirm the conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA